UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

LEROI BOUCHE,

    Plaintiff,

 - against -

CITY OF MOUNT VERNON,  POLICE
OFFICER ANTHONY MITCHELL,
POLICE OFFICER ENZO BAIA, POLICE
OFFICER GEORGE OSSIPO in their
official and individual capacities, and JOHN
and JANE DOE 1-10,

    Defendants.
-------------------------------------------------------X

**OPINION AND ORDER**

**11 Civ. 5246 (SAS)**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

    Leroi Bouche brings this action pursuant to section 1983 of Title 42 of

the United States Code ("section 1983") raising seventeen federal and state claims.

The claims are based on allegedly coerced and falsified statements police officers

obtained from three witnesses in a murder investigation, leading to the alleged

false arrest and malicious prosecution of the plaintiff.  Defendants now move to

dismiss Bouche's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim for which relief may be granted.[1]  For the following

reasons, defendants' motion to dismiss is granted in part and denied in part.

## II.    BACKGROUND[2]

### A.    The Incident Leading to Bouche's Arrest

On January 12, 2009, several police officers arrested Bouche for an

incident occurring on one of three dates: August 13, 2008, October 13, 2008 or

August 13, 2009.[3]  The incident involved the death of Shomari Knox, who was

operating a vehicle in the early hours of the morning when he was shot and killed.[4]

The other passengers in the car were Turon Savoy, Corey Cabannis, Donny Dixon,

and Travis Bryant.[5]  All four passengers told the police that they could not identify

the shooter because it was dark outside and the shooter was wearing a hoodie.[6]

---

[1]    Defendants also request a "change of venue" from the Southern
District of New York, New York County to the Southern District of New York,
Westchester County.  Because both courts are located in the Southern District of
New York, this request will be addressed at a pretrial conference.

[2]    The following facts are drawn from the Complaint and are presumed
to be true for purposes of this motion.

[3]    Plaintiff cites three different dates on which Shomari Knox was killed.
*See* Complaint ("Compl.") ¶¶ 15, 20, 24.  Plaintiff's timeline would otherwise
suggest that the correct date is August 13, 2008.

[4]    *See id.* ¶ 15.

[5]    *See id.* ¶ 16.

[6]    *See id.* ¶ 17.

Subsequently, three individuals who were questioned by police about the shooting implicated Bouche in the crime.[7]

### B.   The Three Witnesses Linking Bouche to the Shooting

The first witness, Janita Robinson, was arrested on unrelated felony charges on September 22, 2008.[8]  On October 16, 2008, Robinson was interrogated by Police Officers Mitchell and Baia about her previous conversations and interactions with Bouche.[9]  Bouche claims that Robinson provided false statements about the shooting, in exchange for leniency in her pending criminal matter.[10]  The second witness, Teena Castellano, was interrogated by Police Officers Mitchell and Ossipo after being arrested on January 7, 2009 on unrelated felony charges. Bouche again alleges that Castellano provided false statements and information about the shooting, in exchange for leniency in her pending criminal matter.  The final witness, Savoy, was one of the passengers in the car on the night of the murder.  Savoy was arrested and prosecuted for an unrelated felony assault on April 22, 2009.[11]  Savoy was questioned by police officers about the Knox

---

[7]    *See id.* ¶¶ 19-22.

[8]    *See id.* ¶ 18.

[9]    *See id.* ¶ 19.

[10]   *See id.* ¶ 20.

[11]   *See id.* ¶ 23.

shooting and identified Bouche as the shooter.  Bouche alleges that the detectives coerced Savoy into recanting his original statement that he could not identify the shooter and identifying Bouche as the suspect.  This identification of the plaintiff occurred seven months after the shooting.  Bouche also alleges that the defendants showed Savoy a photograph of him during the interrogation and "indicated that he should identify the person depicted in the photos as the perpetrator . . . and that he should pick that same person out in a line-up which was held on June 3, 2009."[12] Bouche alleges that in exchange for identifying him in the interrogation room and in the line-up, Savoy was promised and received a reduced sentence.[13]

### C.    The Arrest and Subsequent Trial

Bouche was eventually arrested for the murder of Knox.  He alleges that "as a result of the defendants' improper and unlawful investigation of Shomari Knox's death, and the defendants, intentional, reckless, and/or deliberate disregard for plaintiff's rights, plaintiff was indicted by a Grand Jury."[14]  While Bouche was awaiting trial, he was remanded and incarcerated at the Westchester County

---

[12]    *Id.* ¶ 26.

[13]    *See id.* ¶ 27.

[14]    *Id.* ¶ 32.

Department of Corrections ("WCDOC") and on Rikers Island.[15]  Subsequently, on

April 29, 2010, Bouche was acquitted of all charges and the case record was

sealed.[16]

Bouche alleges that his arrest and prosecution were a "direct result of

the unconstitutional policies, customs or practices of the CITY OF MOUNT

VERNON, including, without limitation, the inadequate screening, hiring,

retaining, training, and supervising of its employees."[17]  Additionally, Bouche

alleges that what allegedly happened to him is not an isolated incident, and that the

City is aware that many of the City's officers are insufficiently trained and

supervised.  As a result of his alleged false arrest and malicious prosecution,

Bouche claims he sustained "physical injuries, emotional distress, embarrassment,

and humiliation, and deprivation of his constitutional rights."[18]

## III.   LEGAL STANDARDS

### A.    Rule 12(b)(6) - Failure to State a Claim

---

[15]     *See id.* ¶ 33.

[16]     *See id.* ¶ 34.

[17]     *Id.* ¶ 36.

[18]     *Id.* ¶ 40.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must evaluate the sufficiency of a complaint under the "two-pronged approach" articulated by the Supreme Court in *Ashcroft v. Iqbal*.[19]  *First*, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[20]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[21]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[22]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[23]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[19]     556 U.S. —, 129 S. Ct. 1937, 1950 (2009).

[20]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[21]     *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[22]     *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[23]     *Twombly*, 550 U.S. at 564.

liable for the misconduct alleged."[24]  Plausibility "is not akin to a probability

requirement;" rather, plausibility requires "more than a sheer possibility that a

defendant has acted unlawfully."[25]

  "In considering a motion to dismiss for failure to state a claim

pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint."[26]  However, a court may also consider

a document, not incorporated by reference, "where the complaint 'relies heavily

upon its terms and effect,' thereby rendering the document 'integral' to the

complaint."[27]

**B.** **Section 1983**

  Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any

---

[24] *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[25] *Id.* (quotation marks omitted).

[26] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[27] *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.
2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156
(2d Cir. 2006).

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[28]  "The purpose of [section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[29]  In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[30]  Any form of liability under section 1983 requires that the defendant's direct involvement caused the damages. "Because vicarious liability is inapplicable to ... [section] 1983 suits,

---

[28]     *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  *Accord  Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.'") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

[29]     *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[30]     *See Palmieri v. Lynch,* 932 F.3d 73, 78 (2d Cir. 2004).

a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[31]

For a person deprived of a constitutional right to have recourse against a municipality under section 1983, he or she must show harm that results from an identified municipal "policy," "custom," or "practice."[32]   In other words, a municipality may not be found liable simply because one of its employees or agents is guilty of some wrongdoing.[33]   Moreover, a policy, custom, or practice cannot arise soley from a single instance of unconstitutional conduct by an employee of the municipality.[34]   The Supreme Court has emphasized that

> [i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct

---

[31]    *Iqbal,* 129 S.Ct. at 1948 (citations omitted).

[32]    *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[33]    *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 402 (1997).

[34]    *See Tuttle*, 471 U.S. at 831 (Brennan, J., concurring in part and concurring in the judgment) ("[T]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.").

causal link between the municipal action and the deprivation of federal rights.[35]

In the absence of an established written municipal policy, a plaintiff must prove that a municipal practice was so "'persistent or widespread' as to constitute 'a custom or usage with the force of law,'"[36] or that a practice or custom of subordinate employees was "so manifest as to imply the constructive acquiescence of senior policy-making officials."[37]

## C. False Arrest and False Imprisonment

A section 1983 claim for false arrest arises under the Fourth Amendment right to be free from unreasonable seizure and is identical to a claim for false arrest under New York law.[38]  False arrest and false imprisonment are synonymous under New York law.[39]  To establish a claim for false arrest/false imprisonment, a plaintiff must show that "(1) the defendant intended to confine the

---

[35]      *Brown*, 520 U.S. at 404.

[36]      *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Patterson v. County of Oneida*, *N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)).

[37]      *Id.* (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

[38]      *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  *See also Jenkins v. City of New York*, 478 F.3d 76, 84-85 (2d Cir. 2007).

[39]      *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). *See also Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991).

plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."[40]

The existence of probable cause to arrest is a complete defense to a false arrest/imprisonment claim.[41]  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."[42]  It is well-established that "[w]hen information [regarding an alleged crime] is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity."[43]  A victim's delay in

---

[40]    *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003).

[41]    *See Jones v. J.C. Penny's Dept. Stores Inc.*, 317 Fed. Appx. 71, 73 (2d Cir. 2009).

[42]    *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted, alteration in original).  *Accord Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe than an individual has committed even a very minor criminal offense . . . he may, without violating the Fourth Amendment, arrest the offender.").

[43]    *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

reporting a crime may also be a factor in evaluating the victim's credibility and the assessment of probable cause.[44]

### D.    Malicious Prosecution

A claim for malicious prosecution is distinct from an action for false arrest/false imprisonment because it is composed of different elements and protects a different interest.[45]  "Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty."[46]  In order to establish a claim for malicious prosecution under section 1983, a plaintiff must also allege all the elements of malicious prosecution under state law.[47]  "To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show: (1) that the defendant commenced or

---

[44]      *See Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (concluding on motion to dismiss a section 1983 claim for false arrest that the victims' delay of several weeks in reporting a crime undermined his/her credibility for purposes of giving police probable cause to arrest).

[45]      *See Weyant*, 101 F.3d at 853.

[46]      *Singer*, 63 F.3d at 117.

[47]      *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).  *See also Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989) ("A claim of malicious prosecution brought pursuant to section[] 1983 . . . is governed by state law in the absence of federal common law.").

continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice."[48]  To demonstrate malice in a malicious prosecution claim, plaintiff does not have "to prove that the defendant was motivated by spite or hatred . . . ."[49]  Rather, a plaintiff must show that the defendant "commence[d] a criminal proceeding 'due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"[50]  "A lack of probable cause generally creates an inference of malice."[51]

"[I]n a malicious prosecution action, the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced."[52]  "[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that

---

[48]   *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).

[49]   *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978).

[50]   *Maskantz v. Hayes*, 832 N.Y.S. 2d 566, 570 (1st Dep't 2007) (quoting *Nardelli*, 44 N.Y.2d at 502-03).

[51]    *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) (internal citation omitted).

[52]   *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) (citing *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999)).

may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"[53]  "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment."[54]

### E.    Qualified Immunity

Qualified immunity protects officials from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[55]  The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful."[56]  The Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary

---

[53]    *Savino*, 331 F.3d at 72 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)).

[54]    *Id.* at 73.

[55]    *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)).

[56]    *Id.* (quotation marks and citation omitted).  *Accord Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010)(citations omitted)*.*

judgment must accept the more stringent standard applicable to this procedural route."[57]

"It is well established that an arrest without probable cause is a constitutional violation."[58]   However, "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."[59]   "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"[60]

### F.   Abuse of Process

"'In its broadest sense, abuse of process may be defined as misuse or perversion of regularly issued legal process for a purpose not justified by the nature

---

[57]   *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

[58]   *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 154 (S.D.N.Y. 2006).

[59]   *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

[60]   *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

of the process.'"[61]  "In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'"[62]

## G.  Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."[63]  "Liability only attaches if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."[64]

---

[61]  *Sipsas v. Vaz,* 855 N.Y.S. 2d 248, 249 (2d Dep't 2008) (quoting *Board of Ed., of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Local 1889*, 38 N.Y. 2d 397, 400 (1975)).

[62]  *Savino*, 331 F.3d at 76 (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

[63]  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

[64]  *Tavares v. City of New York*, No. 08 Civ. 3782, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010) (internal quotation marks and citation omitted).

### H.     Intentional Infliction of Emotional Distress

"New York law requires that a plaintiff alleging intentional infliction of emotional distress prove four elements: '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.'"[65]  Whether the alleged conduct is sufficiently extreme and outrageous is a matter of law for the courts to decide.[66] The extreme and outrageous requirement provides for liability only where the conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[67]

### I.     Negligence

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury

---

[65]     *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citing *Howell v. New York Post Co.,* 81 N.Y.2d 115, 121 (1993)).

[66]     *See Koulkina v. City of New York,* 559 F. Supp. 2d 300, 324 (S.D.N.Y. 2008) (quoting *Howell*, 81 N.Y.2d at 121).

[67]     *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quotation marks and citations omitted).

substantially caused by that breach."[68]   To state a claim for negligent supervision, a plaintiff must first plead that an employee was negligent. The plaintiff must then allege "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels."[69]

## IV.   DISCUSSION

### A.    Claim One - Deprivation of Rights Under Section 1983

Because section 1983 "does not create a federal right or benefit;  it simply provides a mechanism for enforcing a right or benefit established elsewhere,"[70] claim one must be dismissed.

### B.    Claim Two - False Arrest

---

[68]      *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).

[69]      *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citation and quotations omitted).

[70]      *Morris-Hayes*, 423 F.3d at 159.

Defendants argue that because three witnesses identified Bouche as the shooter, the officers had probable cause to arrest him.[71] The existence of probable cause defeats a section 1983 false arrest claim.[72] "[T]he probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or witness where none are apparent."[73] Nonetheless, if a defendant knows that witness statements are false or coerced, this will defeat probable cause.

Here, the officers may well have had reasons to question the veracity of the witnesses. For instance, Savoy, a passenger in the car during the shooting, originally told the police that he was unable to identify the shooter. However, when questioned nearly eight months after the shooting, and after being arrested on a separate felony offense, Savoy identified Bouche as the shooter. Further, because Bouche alleges that the police officers coerced Savoy into falsely identifying Bouche, it is plausible that the officers knew that they did not have the necessary probable cause to arrest him. Similarly, Castellano identified Bouche

---

[71] *See* Defendants' Memorandum of Law in Support of the Motion for Dismissal ("Def. Mem.") at 4-7.

[72] *See Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

[73] *Parisi v. Suffolk County*, No. 04 Civ. 2187, 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009).

five months after the crime was committed, and only when she was in custody for an unrelated crime. The lengthy delays, as well as the circumstances in which the witnesses eventually identified Bouche as the shooter,  raise questions as to the legitimacy of the eyewitness accounts.  Taking the facts alleged in the Complaint as true, there were sufficient indications that the identifications were unreliable and could not establish probable cause.  The defendants' motion to dismiss the false arrest claim based on the existence of probable cause is therefore denied.[74]

### C.    Claims Three and Nine - Malicious Prosecution

Defendants argue that Bouche's malicious prosecution claims must be dismissed because all decisions following the arraignment were made by the district attorney's office rather than the defendants.  Additionally, defendants argue that Bouche failed to allege that any of the defendants had any awareness of "conscious falsity" and therefore cannot establish malice.[75]  "Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution 'when a police officer creates false information

---

[74]    There are no allegations that any other police officer was involved in the arrest or subsequent prosecution of Bouche.  Therefore, the John Doe defendants are dismissed.  *See Williams*, 428 F. Supp. 2d at 157.

[75]    *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002).

-20-

likely to influence a jury's decision and forwards that information to prosecutors.'"[76]

Bouche has adequately stated a claim for malicious prosecution under state law and under section 1983.  Bouche has alleged that the police department acted in bad faith in improperly creating and then using unreliable eyewitness identifications.  Further, this allegation of bad faith also goes to the "conscious falsity" needed to plead malice.  Malice means "that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." [77]  Therefore, defendants' motion to dismiss Bouche's federal and state claims for malicious prosecution is denied.

### D.   Claim Five - Qualified Immunity

The defendants argue, in the alternative, that the individual defendants are entitled to qualified immunity for the false arrest and malicious prosecution claims, even in the absence of probable cause, because it was objectively reasonable for them to believe there was probable cause, or at the very least,

---

[76]     *Brome v. City of New York*, No. 02 Civ. 7184, 2004 WL 502645, at *5-6 (S.D.N.Y.  Mar. 15, 2004) (citing *Ricciuti v. New York City Transit Auth*., 124 F.3d 123, 130 (2d Cir. 1997)).

[77]     *Brogdon*, 200 F. Supp. 2d at 423 (internal quotation omitted).

reasonable officers could disagree on whether there was probable cause. However, at this early stage it is impossible to determine whether it was objectively reasonable for an officer to believe there was probable cause to arrest and prosecute Bouche or even whether reasonable officers could disagree on this question. Bouche alleges that the officers intentionally created the false identifications which led to his arrest and prosecution. If this is accurate, the officers would not be entitled to qualified immunity because no reasonable officer would believe that there was probable cause. Accordingly, defendants' motion to dismiss based on qualified immunity is denied, without prejudice and with leave to renew.

### E.    Claims Four and Ten - Abuse of Process

When an arresting officer is alleged to have committed "malicious abuse of process," the plaintiff "must claim that [the arresting officer] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."[78] Plaintiff has only alleged that defendants initiated the proceedings "to get credit for a high profile felony arrest."[79] Plaintiff has not pled that the officers sought to achieve a collateral objective beyond or in addition to an arrest of a suspect and to

---

[78]    *Savino*, 331 F.3d at 77.

[79]    Compl. ¶ 31.

close a homicide case.  Therefore, defendants' motion to dismiss the abuse of

process claims is granted.

### F.    Claim Five - Failure to Intervene

Plaintiff's failure to intervene claim is vague and conclusory.  Plaintiff

alleges that "[d]efendants had an affirmative duty to intervene on behalf of plaintiff

LEROY BOUCHE, whose constitutional rights were being violated in their

presence by other officers."  It is unclear which defendants plaintiff is referring to.

Bouche only refers to the defendants in the collective, never identifying which

defendants were responsible for specific actions.  Because plaintiff failed to state

who or how defendants failed to intervene, defendants' motion to dismiss claim

five is granted.

### G.    Claim Six - Deprivation of Substantive Due Process[80]

"Where a particular constitutional amendment 'provides an explicit

textual source of constitutional protection' against a particular sort of government

behavior, 'that Amendment, not the more generalized notion of 'substantive due

process,' must be the guide for analyzing these claims.'"[81]  Here, plaintiff'

---

[80]    Although defendants did not specifically analyze this claim, I will
address it on its merits in the hopes of reducing plaintiff's excessive number of
claims.

[81]    *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v.
Connor*, 480 U.S. 386, 395 (1989).

substantive due process claim is based upon the events surrounding his arrest and

subsequent prosecution.  Because the Fourth Amendment provides an explicit

textual source for the constitutional protection in question, plaintiff's substantive

due process claim under the Fourteenth Amendment is improper, and is therefore

dismissed.[82]

**H.    Claim Seven - Supervisory Liability**

Plaintiff has not adequately pled that the individual defendants have

supervisory liability under section 1983.  Imposition of liability under section 1983

requires a defendant's direct involvement in the alleged constitutional violation.[83]

Thus, "[a] supervisory official cannot be liable solely on account of the acts or

omissions of his or her subordinates."[84]  In 1995, the Second Circuit held that the

personal involvement of a supervisory defendant may be shown by evidence that:

(1) the defendant participated directly in the alleged constitutional violation, (2) the

---

[82]    *See Simons v. State of New York*, 472 F. Supp. 2d. 253, 265 (N.D.N.Y. 2007).

[83]     *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'") (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)).

[84]    *Bellamy v. Mount Vernon Hosp.,* No. 07 Civ. 1801, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009).

defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicated that unconstitutional acts were occurring.[85]  However, in 2009, the Supreme Court held that  "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[86]  "Accordingly only the first and third *Colon* factors have survived the Supreme Court's decision in *Iqbal*."[87]

　　　　　In the instant case, the Complaint does not identify which defendants were considered supervisors or adequately establish their alleged personal

---

[85]     *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

[86]     *Iqbal*, 129 S. Ct. at 1948-49 (citations omitted) (explicitly rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").

[87]     *Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).

involvement.  Therefore, defendants' motion to dismiss plaintiff's supervisory liability claim is dismissed.

### I.     Claim Eight - Monell Claim Against the City of Mount Vernon

In order to sustain a claim for relief under section 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right.[88]  "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference . . . ."[89]  "Plaintiff's argument that discovery is needed to acquire factual information regarding the specific policy or custom is not compelling."[90]  Bouche has not alleged any facts tending to support an inference that any improper practice or custom was endorsed by the City.  Accordingly, plaintiff's claim of municipal liability is dismissed.

### J.     Claim Eleven - Intentional Infliction of Emotional Distress

---

[88]    *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

[89]    *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

[90]    *Williams*, 428 F. Supp. 2d at 159.

In New York, a claim of intentional infliction of emotional distress "is a theory of recovery that is to be invoked only as a last resort, when traditional tort remedies are unavailable."[91]   The conduct plaintiff complains of is clearly encompassed in his other claims, including false arrest, false imprisonment, and malicious prosecution.  Therefore, defendants' motion to dismiss is granted as to Bouche's claim for intentional infliction of emotional distress.

### K.    Claim Twelve and Thirteen - Negligent Screening, Hiring, Retention, Training and Supervision

Bouche alleges that the City has failed to use reasonable care in the screening, hiring, retention, training and supervision of the individual defendants. "A claim for negligent hiring, retention, supervision and training is based on the employer's direct negligence."[92]   "Thus, an essential element of a cause of action in negligent hiring, retention, supervision, and training is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury."[93]   Plaintiff has not alleged facts sufficient to infer that the City knew of

---

[91]    *Thomas v. County of Putnam*, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003).

[92]    *Saldana v. Village of Port Chester*, No. 09 Civ. 6268, 2010 WL 6117083, at * 5 (S.D.N.Y. July 10, 2010) (citing *Sheila C. v. Povich*, 781 N.Y.S. 2d 342, 350 (1st Dep't 2004)).

[93]    *Id*. (internal citation and quotation omitted).

the officers' propensity to act in the manner alleged.  Accordingly, defendants'

motion to dismiss the claims for negligent hiring, retention, supervision, and

training is granted and claims twelve and thirteen are dismissed.

### L.    Claim Fourteen - Negligence

Plaintiff's negligence claim is based upon the circumstances of his arrest and

subsequent prosecution.  "Under New York law, a plaintiff may not recover under

general negligence principles for a claim that law enforcement officers failed to

exercise the appropriate degree of care in effecting an arrest or initiating a

prosecution."[94]  Additionally "[t]o the extent that Plaintiff asserts this claim against

the officers who allegedly wronged him, his negligence claim fails because the

Complaint clearly alleges intentional conduct."[95]  With regard to plaintiff's

negligence claim against the City, it is duplicative of claims twelve and thirteen for

negligent hiring, retention, supervision and training.  Therefore, claim fourteen is

dismissed.

### M.    Claim Fifteen - *Respondeat Superior* Liability

Plaintiff argues that the City, as employer of the officers, is

---

[94]     *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  *Accord Rheingold v. Harrison Town Police Dept.,* 568 F. Supp. 2d 384 (S.D.N.Y. 2008).

[95]     *Johnson ex rel. Johnson v. County of Nassau*, No. 09 Civ. 4746, 2010 WL 3852032, at *6 (E.D.N.Y. Sept. 27, 2010).

responsible for their conduct under *respondeat superior*.  Defendants do not specifically address this claim in their motion to dismiss, only stating that municipalities are immune from liability based on discretionary acts of police officers - provided the actions of the officers were not inconsistent with acceptable police practice.[96]   However, "[c]ities may be held vicariously liable for state law torts committed by police officers under a theory of *respondeat superior*."[97]   To the extent plaintiff seeks to impose liability on the City under a common law theory of *respondeat superior* for his false arrest and malicious prosecution claims, he is allowed to proceed.  Accordingly, defendants' motion to dismiss claim fifteen is denied.

### N.    Claims Sixteen and Seventeen - New York State Constitution Claims

Plaintiff's sixteenth and seventeenth causes of action purport to raise claims under the New York State Constitution for equal protection and for his right to be free from unreasonable seizure of his person and property.  In order to adequately establish an equal protection claim, plaintiff must show discrimination

---

[96]     See Def. Mem. at 11.

[97]     *McMahon v. Fura*, No. 10 Civ. 1063, 2011 WL 6739517, at *13 (N.D.N.Y. Dec. 23, 2011) (citing *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010).

was directed at an identifiable or suspect class.[98]  Bouche does not allege that he

was subjected to discrimination by any of the defendants based on race, color,

creed or religion.  His claim only addresses the circumstances leading to his arrest

and prosecution, without any mention of discrimination.  As such, defendants'

motion to dismiss claim sixteen is granted and is dismissed.  However, the claim

for violations of Article I, section 12 remain, in accordance with the probable cause

reasoning discussed above.  Therefore, defendants' motion to dismiss claim

seventeen is denied.

### O.    Leave to Replead

Whether to permit a plaintiff to amend his complaint is a matter

committed to a court's "sound discretion."[99]  Rule 15(a) provides that leave to

amend a complaint "shall be freely given when justice so requires."[100]  Moreover,

"[i]t is the usual practice upon granting a motion to dismiss to allow leave to

---

[98]     *See* N.Y. Const. Art. 1, § 11.

[99]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.
2007).

[100]    Fed. R. Civ. P. 15(a).

replead."[101]  Plaintiff may amend his complaint to allege with additional specificity claims four, five, seven, eight, ten, twelve, and thirteen within twenty (20) days of the date of this Order.  The remaining claims (one, six, eleven, and fourteen) are dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted as to claims one, four, five, six, seven, eight, ten, eleven, twelve, thirteen, fourteen and sixteen and is denied as to claims two, three, nine, fifteen and seventeen.  The Clerk of the Court is directed to close this motion [Docket No. 5].  A conference is scheduled for April 23, 2012 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 22, 2012

---

[101]    *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

**-Appearances-**

**For Plaintiff:**

Wayne C. Bodden, Esq.
Law Office of Wayne C. Bodden P.C.
45 Main Street Suite 820
Brooklyn, NY 11201
(917) 416-7028

**For Defendants:**

Hina Sherwani
Corporation Counsel, City of Mt. Vernon
1 Roosevelt Square, Rm. 111
Mt. Vernon, NY 10550
(914) 665-2374