**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

LEROI BOUCHE,

                **Plaintiff,**

    **- against -**

CITY OF MOUNT VERNON,  POLICE
OFFICER ANTHONY MITCHELL,
POLICE OFFICER ENZO BAIA, POLICE
OFFICER GEORGE OSSIPO in their
official and individual capacities, and JOHN
and JANE DOE 1-10,

             **Defendants.**
-------------------------------------------------------X

**OPINION AND ORDER**

**11 Civ. 5246 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/28/13

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

         Leroi Bouche brings this action pursuant to section 1983 of Title 42 of the United States Code ("section 1983") raising federal and state claims based on allegedly coerced and falsified statements police officers obtained from three witnesses in a murder investigation, leading to the plaintiff's alleged false arrest and malicious prosecution.  Defendants include the City of Mount Vernon ("City") and police officers Anthony Mitchell, Enzo Baia and George Ossipo (collectively, the "individual defendants").  Following adjudication of defendants' motion to dismiss, the remaining claims are: (1) false arrest; (2) malicious prosecution; (3)

the City's liability under a theory of *respondeat superior*; and (4) a cause of action under Article 1,§ 12 of the New York Constitution.  Defendants now move for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure on the ground that the individual defendants had probable cause or arguable probable cause to arrest Bouche and are therefore entitled to qualified immunity and dismissal of the remaining claims.  For the following reasons, defendants' motion is granted.

## II.    BACKGROUND[1]

### A.    Undisputed Facts

#### 1.    The Incident Leading to Bouche's Arrest

On January 12, 2009, several police officers arrested Bouche for an incident occurring on August 13, 2008.[2]  The incident involved the death of Shomari Knox, a known gang member, who was operating a vehicle in the early hours of the morning when he was shot and killed.[3]  The other passengers in the car

---

[1]    The following facts are derived from the Complaint and from the parties' Rule 56.1 statements and supporting documents.  The facts are undisputed unless otherwise noted; where disputed, they are construed in the light most favorable to the plaintiff.  *See, e.g.*, *Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

[2]    *See* Defendants' Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") ¶ 3.

[3]    *See id*. ¶¶ 4-5.

were Turon Savoy, Corey Cabannis, Donny Dixon, and Travis Bryant.[4]   In addition to speaking with the witnesses in the car, detectives spoke with over twenty people, including the mothers of Donnie Dixon and Turon Savoy.[5]   Both women stated that they had overheard their sons confirming that Bouche had committed the murder.[6]   Days prior to the homicide, Shomari Knox attempted to shoot Bouche in the head but the gun jammed.[7]   On August 24, 2008, just weeks after the Knox murder, Bouche was shot twice in the Fourth Street Park in Mount Vernon, New York.   When interviewed by Officer Mitchell at the hospital, Bouche stated that he believed he was shot in retaliation for the murder of Knox.[8]   Bouche also told police that he did not feel bad that Knox had been killed.[9]

On January 12, 2009, Bouche was arrested for domestic violence.[10] Tanisha Cephas, the domestic violence victim, told detectives that Bouche beat her

---

[4]      *See id.* ¶ 6.

[5]      *See id.* ¶¶ 7-8.

[6]      *See id*. ¶ 8.

[7]      *See id.* ¶¶  9-12.

[8]      *See id.* ¶¶ 21-23.

[9]      *See id.* ¶ 22.

[10]      *See id.* ¶¶ 16-18. Bouche is currently incarcerated for this charge. *See also* Domestic Violence Report, Ex. 1b to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem.").

and threatened her because he thought she was talking with others about the Knox murder.[11]  After his arrest on the domestic violence charge, Bouche was interviewed by Officers Mitchell and Ossipo about the Knox shooting.[12]

### 2.      Three Witnesses Linking Bouche to the Shooting

The first witness, Janita Robinson, gave statements to Mount Vernon Police on at least three separate occasions.  On October 16, 2008, Robinson was interviewed by Officers Mitchell and Baia about her previous conversations and interactions with Bouche.  Specifically, Robinson stated that she had witnessed the attempted shooting of Bouche and overheard Bouche say he was going to kill Knox.  Robinson testified at the grand jury and the trial that she had heard Bouche

---

[11]      *See* Detective Report, Ex. 1a to Def. Mem., Bates Stamp No. 23. Bouche denies making any statement and argues that there are no memorialized or sworn statements by witnesses to support such a claim except those made by the defendants in the Detective Report.  *See* Bouche's Answer to Defendants' Rule 56.1 Statement of Material Facts ("Pl. 56.1") ¶ 17.  It should be noted that Plaintiff's 56.1 answer was incomplete, only answering up to paragraph 30 of Defendants' 56.1 and did not include a counter-statement of issues of material fact. Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York ("Local Rule 56.1") requires a party opposing summary judgment to respond to the moving parties' 56.1 statement with a statement of facts as to which a triable issue remains. *See* Local Rule 56.1(b). The facts set forth in a moving party's statement "will be deemed to be admitted unless controverted" by the opposing party's statement.  Local Rule 56.1(c).  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 72 (2d Cir. 2001). However "a district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Id.*

[12]      *See* Def. 56.1 ¶ 19.

ask where Knox was on the night of the shooting and then he asked for a ride, stating "I'm going to kill this nigger."[13]  Further, Robinson stated that when she told Bouche that people were saying he had killed Knox, Bouche was not worried about it.[14]  Although Bouche does not dispute that Robinson made these statements, he claims they were not made voluntarily and that she provided false statements about the shooting, in exchange for leniency in her pending criminal matter.[15]

The second witness, Teena Castellano, was interviewed by Officers Mitchell and Ossipo after being arrested on January 7, 2009, on unrelated felony charges.  Castellano told the Officers that she had spoken with Bouche after the Knox shooting and that he had told her that "I had to take care of this problem" and that "I took care of that.  I, we, had to take this nigger outta here, off the planet."[16] Castellano also confirmed to the Officers that Bouche said that Knox was the one

---

[13]      MV-61B Supplementary Report to the Knox Homicide Investigation, Ex. 1a to Def. Mem. at Bates Nos. 56, 61.

[14]      *See* 10/16/08 Transcript of Janita Robinson Interview, Ex. 5a to Def. Mem. at 12.

[15]      *See* Complaint ("Compl.") ¶ 20.

[16]      1/7/09 Castellano Transcript, Ex. 6a to Def. Mem.

who had tried to shoot him.  Bouche again alleges that Castellano provided false

statements in exchange for leniency in her pending criminal matter.

The final witness, Turon Savoy, was one of the passengers in the car

on the night of the murder.  Originally, Savoy had been uncooperative about

answering questions related to the shooting, stating that he had not seen the face of

the person who had shot into the vehicle.[17]  Savoy was arrested and prosecuted for

an unrelated felony assault on April 22, 2009.[18]  Savoy was again questioned by

police officers about the Knox shooting and he identified Bouche as the shooter.[19]

Savoy also said that he had not come forward earlier for fear that he or his family

would be killed in retaliation for naming the shooter.[20]   On June 3, 2009, Savoy, in

the presence of his attorney, identified Bouche at a lineup.[21]  However, during the

trial, Savoy recanted, stating that he had not seen the shooter's face and that the

police officers had coerced him into identifying Bouche.

## C.    The Arrest and Subsequent Trial

---

[17]    *See* MV 61B Supplementary Report, Ex. 1a to Def. Mem., Bates No.
79.

[18]    *See* Compl. ¶ 23.

[19]    Savoy identified the shooter as "Loc," Bouche's street name. *See* Def.
56.1 ¶ 43. *See also* Detective Report, Ex. 1a to Def. Mem. at Bates Stamp No. 71.

[20]    *See* Def. 56.1 ¶ 44.

[21]    *See id.* ¶ 45.

On January 13, 2009, while under arrest for the domestic violence charge and after being interrogated by the individual defendants, Bouche was charged with Knox's murder.  Bouche was indicted by a grand jury on February 10, 2009.[22]  While Bouche was awaiting trial, he was remanded to and incarcerated at the Westchester County Department of Corrections ("WCDOC") and on Rikers Island.[23]  Subsequently, on April 29, 2010, Bouche was acquitted of all charges and the case record was sealed.[24]

### D.    Disputed Facts

Bouche alleges that the detectives coerced Savoy into recanting his original statement that he could not identify the shooter and instead identifying Bouche as the suspect.  Savoy's identification of Bouche occurred more than seven months after the shooting.  Bouche also alleges that the individual defendants showed Savoy a photograph of him during the interrogation and "indicated that he should identify the person depicted in the photos as the perpetrator . . . and that he [Savoy] should pick that same person out in a line-up which was held on June 3,

---

[22]    *See* Leroi Bouche Grand Jury Indictment, Ex. 2 to Def. Mem.  *See also* 11/20/12 Affirmation of ADA John Carmody, filed in Support of Def. Mem., Docket. No. 39, at 3.

[23]    *See* Def. 56.1 ¶ 33.

[24]    *See id.* ¶ 34.

2009."[25]  Bouche alleges that in exchange for identifying him in the interrogation

room and in the line-up, Savoy was promised and received a reduced sentence.[26]

### 1. Affidavits by Witnesses Recanting Their Statements

Two of the witnesses who testified in the grand jury and at Bouche's

trial submitted recent affidavits recanting their prior testimony.[27]  Janita

Robinson's affidavit, signed September 21, 2012, declares that the individual

defendants interviewed her several times, each time with increased pressure to give

them information on the Knox shooting.[28]  Robinson states that the individual

defendants told her their theory of the case and the type of information she could

supply that would be helpful.[29]  Further, she states that she was told that if she

implicated Bouche in the shooting, she would receive more favorable treatment for

her prior arrests.[30]  Her affidavit states that the various recordings of meetings with

the police do not accurately reflect the entire conversations and that she cooperated

---

[25]     Compl. ¶ 26.

[26]     *See id.* ¶ 27.

[27]     These affidavits are not referenced on Pl. 56.1 but are attached to
plaintiff's opposition papers.

[28]     *See* 9/21/12 Robinson Affidavit, Ex. 5 to Plaintiff's Opposition to the
Motion for Summary Judgment ("Opp. Mem.") at 1.

[29]     *See id.*

[30]     *See id.* at 2.

so as not to go to jail.  Finally, Robinson acknowledges that she is aware of her Fifth Amendment protections and "[i]f called to testify about prior sworn testimony I would invoke my rights against self incrimination."[31]

Teena Castellano submitted an affidavit dated September 20, 2012.[32] The affidavit states that the individual defendants threatened to have authorities take her infant child and imprison her for nine years if she did not implicate Bouche in the Knox investigation.[33]  Castellano states that she was refused phone calls, an attorney and was not processed for her arrest for over twenty-four hours.[34] Further, she claims that she had told the detectives repeatedly that she did not know anything about the cases they were investigating. But after being threatened and detained, she made statements under oath implicating Bouche.  Finally, Castellano states that she is aware of her Fifth Amendment protections against self-incrimination.[35]

---

[31]    *Id.*

[32]    *See* 9/20/12 Castellano Affidavit, Ex. 6 to the Opp. Mem., at 1.

[33]    *See id.*

[34]    *See id.*

[35]    *See id.* at 2.

## III.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36]  "A defendant is entitled to summary judgment where 'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim on which the plaintiff bears the burden of proof."[37]  "'A fact is material when it might affect the outcome of the suit under governing law.'"[38] "We must view the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all inferences in favor of the nonmovant."[39]

---

[36]  Fed. R. Civ. P. 56(a).

[37]  *Martinsky v. City of Bridgeport*, No. 11 Civ. 4173, 2012 WL 6050775, at *1 (2d Cir.  Dec. 6, 2012) (quoting *In re Omnicom Grp., Inc. Sec. Litig.,* 597 F.3d 501, 509 (2d Cir. 2010)).

[38]  *Carter v. Incorporated Village of Ocean Beach*, 415 Fed. App'x 290, 292 (2d Cir. 2011) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[39]  *Southerland v. Garcia*, 483 Fed. App'x 606, 607 (2d Cir. 2012) (citing *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n,* 182 F.3d 157, 160 (2d Cir. 1999).

"It is well established, however, that '[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.'"[40]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[41] and cannot "'rely on conclusory allegations or unsubstantiated speculation.'"[42]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"[43]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of

---

[40]     *Feis v. United States*, 394 Fed. App'x 797, 798 (2d Cir. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.,* 536 F.3d 140, 145 (2d Cir. 2008)).

[41]     *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[42]     *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

[43]     *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

legitimate inferences from the facts are jury functions, not those of a judge.'"[44]

"'The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"[45]

### B.    Section 1983

Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create a federal right or benefit;  it simply provides a mechanism for enforcing a right or benefit established elsewhere."[46]  "The purpose of [section]1983 is to deter state actors from using the badge of their authority to

---

[44]    *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[45]    *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

[46]    *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  *Accord  Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[47]  In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[48]  Any form of liability under section 1983 requires direct involvement by the defendant in causing the plaintiff's damages. "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[49]

## C.    False Arrest and False Imprisonment

A section 1983 claim for false arrest arises under the Fourth Amendment right to be free from unreasonable seizure and is identical to a claim for false arrest under New York law.[50]  False arrest and false imprisonment are

---

[47]    *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[48]    *See Palmieri v. Lynch,* 932 F.3d 73, 78 (2d Cir. 2004).

[49]    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (citations omitted).

[50]    *See Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir. 2006).  *See also Jenkins v. City of New York*, 478 F.3d 76, 84-85 (2d Cir. 2007).

synonymous under New York law.[51]  To establish a claim for false arrest/false imprisonment, a plaintiff must show that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged'"[52]

The existence of probable cause to arrest is a complete defense to a false arrest/imprisonment claim.[53]  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."[54]  It is well-established that "[w]hen information [regarding an alleged crime] is

---

[51]     *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). *See also Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991).

[52]     *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

[53]     *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) ("probable cause is a complete defense to any action for false arrest or malicious prosecution in New York").

[54]     *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted, alteration in original).  *Accord Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe than an individual has committed even a very minor criminal offense . . . he may, without violating the Fourth Amendment, arrest the offender.").

-14-

received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity."[55]   "The evidence required to establish probable cause to arrest 'need not reach the level of evidence necessary to support a conviction . . . but it must constitute more than rumor, suspicion, or even a strong reason to suspect.'"[56]   Further, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."[57]   Thus, the relevant inquiry is whether probable cause existed at the time of arrest.

### D.   Malicious Prosecution

A claim for malicious prosecution is distinct from an action for false arrest/false imprisonment because it is composed of different elements and protects a different interest.[58]   "Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, while the tort of malicious prosecution will implicate post-arraignment

---

[55]      *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

[56]      *Rheingold v. Harrison Town Police Dept.*, 568 F. Supp. 2d 384, 389 (S.D.N.Y. 2008) (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983)).

[57]      *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York*, 60 N.Y.2d 78 (1983)).

[58]      *See Weyant*, 101 F.3d at 853.

deprivations of liberty."[59]  In order to establish a claim for malicious prosecution

under section 1983, a plaintiff must also allege all the elements of malicious

prosecution under state law.[60]  "To state a claim under New York law for the tort of

malicious prosecution, a plaintiff must show: (1) that the defendant commenced or

continued a criminal proceeding against him; (2) that the proceeding was

terminated in the plaintiff's favor; (3) that there was no probable cause for the

proceeding; and (4) that the proceeding was instituted with malice."[61]  To

demonstrate malice in a malicious prosecution claim, plaintiff does not have "to

prove that the defendant was motivated by spite or hatred . . . ."[62]  Rather, a

plaintiff must show that the defendant "commence[d] a criminal proceeding 'due to

a wrong or improper motive, something other than a desire to see the ends of

---

[59]    *Singer*, 63 F.3d at 117.

[60]    *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).  *See also
Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989) ("A claim of malicious
prosecution brought pursuant to section[] 1983 . . . is governed by state law in the
absence of federal common law.").

[61]    *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).

[62]    *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978).

justice served.'"[63]   "A lack of probable cause generally creates an inference of malice."[64]

"[I]n a malicious prosecution action, the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced."[65]  "[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"[66]  "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment."[67]

### E.    Qualified Immunity

Qualified immunity protects officials from liability "if 'their conduct does not violate clearly established statutory or constitutional rights of which a

---

[63]    *Maskantz v. Hayes*, 832 N.Y.S. 2d 566, 570 (1st Dep't 2007) (quoting *Nardelli*, 44 N.Y.2d at 502-03).

[64]     *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) (internal citation omitted).

[65]    *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) (citing *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999)).

[66]    *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon*, 60 N.Y.2d at 83).

[67]    *Id.* at 73.

reasonable person would have known.'"[68]  The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful."[69]

"It is well established that an arrest without probable cause is a constitutional violation."[70]  However, "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."[71]  "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"[72]

---

[68]     *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)).

[69]     *Id.* (quotation marks and citation omitted).  *Accord Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (citations omitted).

[70]     *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 154 (S.D.N.Y. 2006).

[71]     *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

[72]     *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

## VI.   DISCUSSION

### A.   False Arrest

Irrespective of whether the first three prongs are satisfied, a claim for false arrest will fail where a defendant establishes that probable cause existed, as the existence of probable cause as to any crime is a complete defense to an action for false arrest.[73]

### 1.   Probable Cause

In support of their motion for summary judgment, defendants contend that probable cause existed for Bouche's arrest because, prior to the arrest, the following information had been ascertained by the individual defendants: (1) motive (Knox had previously attempted to shoot Bouche – as confirmed by several witnesses); (2) the testimony of Robinson and Castellano, (3) allegations by witnesses that put Bouche at the scene where the murder took place; and (4) Bouche was alleged to have committed the crime according to other neighborhood persons – including Tanisha Cephas and an anonymous informant. This evidence was presented and submitted to a grand jury, which issued an indictment.

---

[73]   *See Wong v. Yoo*, 649 F. Supp. 2d 34, 58 (E.D.N.Y. 2009).

The soundness of an arrest rests on the existence of probable cause at the time of the arrest and immediately before it.[74]  The record includes the transcripts of witnesses who were interviewed on several occasions and each named Bouche in the murder.  Further, it is undisputed that during the investigation, the detectives either individually or collectively spoke with over twenty witnesses and conducted an investigation that lasted over five months.  Other than the recently acquired affidavits of Robinson and Castellano, there is no evidence of any misconduct by the police during the investigation leading to the arrest.

Moreover, probable cause " need not be 'predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer,' and the 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'"[75]  "The focus is simply on 'the validity of the *arrest,* and not on the validity of each charge."[76] Thus, as long as the individual defendants had probable cause to arrest Bouche for any crime, the arrest cannot form the basis for

---

[74]     *See Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996).

[75]     *Rodriguez v. Village of Ossining*, No. 10 Civ. 3814, 2013 WL 154334, at *7 (S.D.N.Y. Jan. 14, 2013) (quoting *Jaegly,* 439 F.3d at153).

[76]     *Id.* (emphasis in original).

a false arrest claim under Section 1983.[77]   Bouche was initially arrested on January 12, 2009, on the domestic violence charge.  It is undisputed that the officers had probable cause to arrest Bouche on this charge.  While in custody for this charge, Bouche was later questioned and then charged that same day with the murder of Knox.  As the individual defendants had probable cause to arrest Bouche on the domestic violence charge, it is unnecessary to address whether there was probable cause on the murder charge because he was already under valid arrest.

### 2.   Castellano and Robinson's Affidavits Recanting Prior Testimony

Even if there were no domestic violence charge to support Bouche's arrest, the arrest would still be valid because it was supported by probable cause. "[T]he probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or witness where none are apparent."[78]   Nonetheless, if a defendant knows that witness statements are false or coerced, this will defeat probable cause.  However, a plaintiff cannot defeat a motion for summary judgment by simply responding with affidavits recanting

---

[77]      *See id.*

[78]      *Parisi v. Suffolk County*, No. 04 Civ. 2187, 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009).

earlier testimony.[79]   "Affidavits submitted to defeat summary judgment must be
admissible themselves or must contain evidence that will be presented in an
admissible form at trial."[80]   Rather, as Rule 56 suggests, "an implicit or explicit
showing that the affiant is prepared to testify in a manner consistent with an
affidavit is required to oppose summary judgment."[81]

---

[79]     *See Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 477 (S.D.N.Y. 2003), *aff'd
sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (citing
*Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 572 (2d
Cir. 1991) (acknowledging that it is well-settled in this Circuit that self-serving
affidavits that contradict prior sworn testimony will not defeat a motion for
summary judgment)). *See also Hay v. Burns Cascade Co., Inc.*, No. 06 Civ. 0137,
2009 WL 414117, at *6 (N.D.N.Y. Feb. 18, 2009) ("If a party, who has been
examined at length on deposition, could raise an issue of fact simply by submitting
an affidavit that, by omission or addition, contradicted his own prior testimony,
this would greatly diminish the utility of summary judgment as a procedure for
screening out sham issues of fact.") (citing *Perma Research and Dev. Co. v. Singer
Co.,* 410 F.2d 572, 578 (2d Cir.1969)). *Jeffreys*  involved a court declining to
credit the unreliable testimony of a *party* to the lawsuit, as opposed to a *witness.*
Nevertheless, the holding in *Jeffreys* can be extended to a witness' testimony if it is
so unreliable that it cannot create an issue of fact because no rational jury could
believe it.

[80]     *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (citing *Celotex
Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986) (stating that nonmoving party need
not "produce evidence in a form that would be admissible at trial" but must "by her
own affidavits . . . designate specific facts showing that there is a genuine issue for
trial")).

[81]     *Santos*, 243 F.3d at 684 (citing Fed.R.Civ.P. 56(e) ("affidavits . . .
shall show affirmatively that the affiant is competent to testify")).

The core of Bouche's argument is that Castellano and Robinson recanted their earlier statements to the police and the grand jury.[82]  Bouche recently procured the affidavits of Robinson and Castellano, signed on September 20 and 21, 2012 respectively, in which they allege that they were coerced by the police into giving inculpatory statements against Bouche.  Bouche thus argues that there is a genuine issue of material fact as to whether probable cause existed and that summary judgment is, therefore, inappropriate.  However, defendants correctly note that these recent affidavits are insufficient to create a genuine issue of material fact as to whether there was probable cause to arrest Bouche at the time he was arrested.[83]  Furthermore, both witnesses stated in their affidavits that they were aware of their Fifth Amendment rights and would therefore not testify about their previous sworn statements.  As such, these affidavits are inadmissible and may not be considered on summary judgment.

---

[82]   Defendants assert that Castellano and Robinson are likely aware of Bouche's impending release from prison on the domestic violence charges, which could explain why they submitted subsequent affidavits recanting their earlier testimony.

[83]   Additionally, the fact that the witnesses were offered reduced sentences in exchange for their testimony does not prove that their statements were coerced. *See Daniels v. D'Aurizo*, 564 F. Supp. 2d 194, 198 (W.D.N.Y. 2008) (fact that witness was offered a reduced charge in exchange for testimony insufficient to show that witness was "asked or induced to be untruthful").

Based on the totality of the evidence presented in the record, no material issue of genuine fact was raised with respect to defendants' probable cause to arrest Bouche.  Accordingly, defendants' motion for summary judgment on the false arrest claim is granted.

### B.    Malicious Prosecution

In order for the malicious prosecution claim to survive a motion for summary judgment, Bouche must have submitted sufficient evidence from which a reasonable jury could find that his indictment was procured as a result of police misconduct undertaken in bad faith.[84]   "[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"[85]

In addition to the Castellano and Robinson affidavits, Bouche points to Savoy's testimony to show malicious prosecution.  Savoy, a passenger in the car during the shooting, originally told the police that he was unable to identify the shooter.  When questioned nearly eight months after the shooting, and after being arrested on a separate felony offense, Savoy identified Bouche as the shooter.

---

[84]    *See Savino*, 331 F.3d at 72.

[85]    *Id.* (quoting *Colon,* 60 N.Y.2d at 83) (emphasis in original).

Savoy stated that he had wanted to talk sooner, but that he and his family were afraid of retaliation. When testifying at Bouche's trial, in Bouche's presence, Savoy recanted his identification, claiming that the police had coerced him into supplying this information. However, Savoy's post-arrest statements and lineup identification – which Bouche now claims were coerced – were given on April 22, 2009 and June 3, 2009, – several months after Bouche's arrest on January 12, 2009 and his indictment on February 10, 2009. The detective report shown to the grand jury relied only on Savoy's initial interview, where he stated that he had not seen the face of the shooter. As such, Savoy's testimony could not have affected the grand jury's decision to indict Bouche. In the absence of sufficient evidence that the individual defendants acted in bad faith in procuring the indictment, no reasonable juror could find that Bouche has overcome the presumption of probable cause that arose from his indictment. As such, defendants are entitled to summary judgment on this claim.

### C.   Qualified Immunity

As it has been established that defendants had at least arguable probable cause to arrest Bouche, defendants are also entitled to qualified immunity as to both the false arrest and malicious prosecution claims.

### D.   *Respondeat Superior* Claim Against the City

Plaintiff argues that the City, as employer of the individual defendants, is responsible for their conduct under *respondeat superior*.  Because the false arrest and malicious prosecution claims have been dismissed under federal as well as state law, the City cannot be held vicariously liable for either of those torts.[86]  As such, defendants' motion for summary judgment as to the *respondeat superior* claims is granted.

### E.   New York Constitution, Article 1, § 12

Defendants argue that Bouche's false arrest and false imprisonment claims pursuant to Article 1, §12[87] of the New York State Constitution should be dismissed because probable cause is a complete defense to false arrest.  The claim for violations of Article I, § 12 fails in accordance with the probable cause

---

[86]   *See Alhovsky v. Ryan*, 658 F. Supp. 2d 526, 539 (S.D.N.Y. 2009), *aff'd sub nom. Alhovsky v. Paul*, 406 Fed. App'x 535 (2d Cir. 2011). ("Furthermore, because the false arrest and false imprisonment claims have been dismissed under state as well as federal law, the City cannot be held vicariously liable for either of those torts.").

[87]   NY Const. Art. 1, § 12 states "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

reasoning discussed above. Accordingly, defendants' motion for summary judgment on this claim is granted.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to close this motion [Docket No. 26] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 28, 2013

-27-

**-Appearances-**

**For Plaintiff:**

Wayne C. Bodden, Esq.
Law Office of Wayne C. Bodden P.C.
45 Main Street, Suite 820
Brooklyn, NY 11201
(917) 416-7028

**For Defendants:**

Hina Sherwani
Corporation Counsel, City of Mount Vernon
1 Roosevelt Square, Room 111
Mount Vernon, NY 10550
(914) 665-2374